Apitz v. Supreme Lodge K. and L. of Honor, 196 Ill. App. 278.

For the reasons above stated, the judgment is reversed and the cause remanded for another trial.

.    *Reversed and remanded.*

MR. JUSTICE NIEHAUS took no part.

---

## Lizzie Apitz, Appellee, v. Supreme Lodge Knights and Ladies of Honor, Appellant.

### Gen. No. 6,007.

**1.** DEATH, § 6*—*when death may be presumed before lapse of time ordinarily required.* The presumption of fact which will justify the conclusion of death before the lapse of time required for the legal presumption of the death of an absentee must arise from specific evidence of circumstances tending to show such death.

**2.** EVIDENCE, § 23*—*when not presumed that Supreme Court names all conditions under which a stated rule will apply.* Where a decision of the Supreme Court names certain circumstances under which a stated rule of law will apply, it is not to be presumed that all the conditions under which such rule would apply are therein named, but that a class of evidence is intended to be described which would warrant the application of the rule.

**3.** DEATH, § 2*—*when presumed to have occurred at end of seven years.* Where there is no specific evidence tending to show the death of an absentee before the expiration of seven years from the date of his disappearance, the death of such absentee is presumed to have occurred at the end of seven years from the date of such disappearance precisely as if there were positive evidence that such absentee died on the last day of such seven-year period.

**4.** INSURANCE, § 794*—*when by-law providing for suspension not waived by acceptance of assessments.* In an action to recover on a certificate of insurance issued by a fraternal benefit society, where plaintiff was the beneficiary named in such certificate, and a by-law of defendant society provided that upon disappearance of insured and failure to reappear within one year from the date of such disappearance insured should stand suspended, and such disappearance took place November 7, 1905, the acceptance by defendant of the assessment for the month of November, 1906, *held* not a waiver of its rights under the by-law, it appearing that such assessment became payable before the expiration of one year after such disappearance.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Apitz v. Supreme Lodge K. and L. of Honor, 196 Ill. App. 278.

5.  INSURANCE, § 747*—*when members of benefit society bound by subsequently enacted by-laws.*  After-enacted by-laws of a fraternal benefit society will bind its members when the contract so provides, so as to change such contract in accordance with such subsequent by-laws.

6.  INSURANCE, § 747*—*when after-enacted by-laws of benefit society not invalid.*  After-enacted by-laws of a fraternal benefit society which forfeit claims for the death of a member in certain cases are not in and of themselves invalid as being unreasonable.

7.  INSURANCE, § 747*—*when benefit society no power to take away its power to adopt by-laws in future.*  A fraternal benefit society cannot by a by-law or by a constitution having only the force of a by-law take away its inherent power to adopt in the future such other by-laws as its charter permits, although such after-enacted by-law may change the manner of adopting by-laws and thereby affect the obligation of the contract.

8.  INSURANCE, § 747*—*what subsequently enacted by-laws included in contract.*  The contract of a member of a fraternal benefit society to be bound by after-enacted by-laws, *held* to mean such by-laws as may be legally enacted either in the manner provided at the date when such member became such or in some other legal manner thereafter provided.

9.  INSURANCE, § 887*—*when subsequently enacted by-law admissible.*  In an action by the beneficiary named in a fraternal benefit certificate, conditioned on the conformance by the member with rules and usages of the society issuing the certificate "now in force or which may hereafter be adopted by the same," the admission in evidence of a by-law adopted after the date when the member became such, *held* not erroneous.

10.  EVIDENCE, § 287*—*when foundation for admission of documentary evidence need not be laid.*  Although there are certain requisites to be observed in the passage of a valid law, by-law or municipal ordinance, yet preliminary proof in detail that such requisites were observed in a particular case is not usual necessary to the competency of the law, by-law or ordinance, especially where the admission in evidence of such law, by-law or ordinance is not objected to on the ground of the want of such requisites, and where the officers and records whereby to prove the observance of such requisites are in court, so that if objection to the evidence is made on that ground, proof may readily be made as to the manner in which such law, by-law or ordinance was passed, if thought necessary by the court.

11.  INSURANCE, § 741*—*when contract not governed by law of state in which benefit society originally incorporated.*  In an action

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

to recover on a certificate of insurance issued by a fraternal benefit society, where plaintiff is the beneficiary named in such certificate, it is immaterial that a by-law of such society is void under the laws of Kentucky, although it appears that such society was originally incorporated in such State, it appearing that subsequently such society was incorporated in Indiana, which Indiana corporation thereupon took over the obligations of the former Kentucky corporation, and thereafter issued in this State the certificate sued on after becoming qualified to business therein, and such society later incorrectly stated in its annual report to the insurance superintendent of this State that it was organized under the laws of Kentucky.

12. INSURANCE, § 913*—*when submission of question of time of death of insured to jury substantial error.* In an action to recover on a certificate of insurance issued by a fraternal benefit society, where plaintiff was the beneficiary named therein, the submission to the jury of the question of the time of the death of the insured *held* substantial error, where under the evidence insured was presumed to have died seven years after his disappearance, and where under a valid by-law of defendant society insured stood suspended one year after such disappearance, so as to preclude a recovery.

13. INSURANCE, § 793*—*when limitation in by-law of time within which action may be brought not waived.* In an action to recover on a certificate of insurance issued by a fraternal benefit society, where plaintiff was the beneficiary named in such certificate, which action was commenced more than seven years after the disappearance of insured, a by-law of defendant society limiting the time within which an action may be brought on such certificate to one year after the death of insured, *held* not waived by the passage of a later by-law providing that in case of such disappearance the beneficiary named therein might continue payment of assessments for one year after such disappearance, and also by receiving from such beneficiary payment of such assessments thereunder, for the reason that such later by-law merely gave the beneficiary such right in order to avoid the suspension of insured for nonpayment of such assessments, and also because such beneficiary was under no obligation to make such payments, and did so at the risk of losing the amount so paid if insured did not reappear within that year.

Appeal from the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding. Heard in this court at the April term, 1915. Reversed with finding of facts. Opinion filed October 20, 1915.

CARPENTER & ST. JOHN and ASHCRAFT & ASHCRAFT, for appellant; EDWIN M. ASHCRAFT, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ROY F. HALL, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

Lizzie Apitz, the appellee, was the wife of August F. Apitz and the beneficiary named in a benefit certificate issued to him December 29, 1894, by the appellant, Supreme Lodge Knights and Ladies of Honor, a fraternal benefit association. August F. Apitz disappeared from his home November 7, 1905, and this suit in assumpsit was brought on said certificate September 23, 1913, and a declaration filed charging, in one count, his death on the date of his disappearance, in another count, at the end of seven years from that date, and in another count, that he had been unaccountably absent for more than seven years and therefore was presumed to be dead, and that the date of his death was within one year from November 7, 1905. The defendant filed the general issue with notice of special defense under by-laws of the company limiting the time within which suit should be brought, and providing for suspension of a member who should disappear. A jury trial resulted in a general verdict for plaintiff for $1,480, and a special verdict finding that Apitz died within one year from November 7, 1905, the date of his disappearance. The court overruled a motion for judgment for defendant on the special verdict, and the defendant's motion for a new trial, and after requiring plaintiff to remit excessive interest, rendered judgment for $1,045, from which this appeal is prosecuted.

The by-laws upon which the defense is grounded were as follows:

"Sec. 3. No suit shall be commenced, and no claim against this Order, based upon a Relief Fund Certificate issued to a member thereof, or upon membership, or alleged membership therein shall be paid after the expiration of one (1) year from the date of the death of such member, except in settlement of a judgment of

282 APPELLATE COURTS OF ILLINOIS.

Apitz v. Supreme Lodge K. and L. of Honor, 196 Ill. App. 278.

a court in an action, or a suit commenced within one (1) year after the right of the claimant or beneficiary named in such Relief Fund Certificate, or who may be a beneficiary under the laws of this Order, shall accrue. All Relief Fund Certificates shall have printed or stamped on the face thereof, notice of the foregoing limitations. As to Relief Fund Certificates now in force, the publication and promulgation of this law shall be sufficient notice of said limitation.''

"Sec. 9. It shall be the duty of a Relief Fund member of the Order to notify the Secretary of his Lodge of any permanent change of residence, and, as far as practicable, to keep the Secretary advised of his post-office address. If any such member shall so fail, and shall change his residence or usual place of abode, or shall disappear from the place or neighborhood in which he shall have usually resided, and his residence shall not be known to his family or to the Secretary of his Lodge, and cannot be ascertained after reasonably diligent inquiry and such disappearance shall be continued for one year, such member shall stand suspended as in case of suspension for the nonpayment of assessments, or dues, and the Financial Secretary of his Lodge shall not receive the assessment or dues from any person. If such member shall reappear and shall make known his place of abode, and shall desire to become reinstated, he may avail himself of the privilege of the reinstatement law of the Order by complying with the requirements of the same within the time required, as in case of the reinstatement of members suspended for nonpayment of assessments or dues.''

There was a by-law in force providing if a member did not pay his assessments during the month for which it was made he should stand suspended, and if he died before being reinstated no moneys should be paid on the benefit certificate. There is no conflict of evidence. It appears that Apitz was of German birth

and forty-one years of age when he disappeared; that he kept a small grocery store in Chicago; was in good health, mentally and physically, possessed of all his faculties. He had a wife and four children and appeared to be much attached to them. He had no business troubles so far as known and no reason is known, or even suggested, for his disappearance. He paid his November assessment four days before he disappeared, and on the day of his disappearance he went to the secretary of the lodge again and paid his assessments in advance for December and January, and on the same day visited other parties from whom he bought goods and paid them what he owed them. He was domestic in his habits; his wife and family lived in the building where he kept his little store and he was seldom away from them. He left home about noon and was never seen or heard from by his family afterwards. The last known of him was two or three hours after he left home, when he called on some one with whom he had dealings. Relatives of the family lived in Chicago and the vicinity and no friend or relative whom he would have been likely to visit lived elsewhere. The only indication that he intended to go away from home at all is furnished by the fact that he was settling with his creditors, and paying his benefit assessments in advance; but he was not dressed as he presumably would have been if he had intended an absence of a few days, and he probably had no considerable amount of money with him. There were many people interested in him and in his family, and intelligent, diligent search and inquiry seems to have been promptly and persistently made without producing any clue whatever, or disclosing any material facts, other than those above stated, to show where he was or why he left home. Appellee paid the benefit assessments for one year, or until and including November, 1906, when she was notified that they would not longer be received. The assessment for each month was pay-

284 . Appellate Courts of Illinois.

Apitz v. Supreme Lodge K. and L. of Honor, 196 Ill. App. 278.

able on or before the last day of the month, therefore this assessment was payable November 1st, within a year of the date of the disappearance, but might have been deferred until November 30th, which was a year and twenty-three days from that date. Under section 9 of the by-laws above quoted, Apitz could not be suspended before November 7th, and it is not claimed that the November assessment was paid after that date.

The first inquiry is, when did Apitz die? And we are of the opinion that the special finding of the jury that he died within a year from the date of his disappearance cannot be sustained by the admitted facts. A similar question was before this court in *Dickinson v. Donovan,* 160 Ill. App. 195; and we affirmed a decree which rested on a finding that a person who had disappeared died before the expiration of the seven-year period. There was quite as much reason to suppose that he died during the first part of that period in the admitted facts of that case as there is in this case. The Supreme Court reversed the judgment of this court and the decree of the Circuit Court, and remanded the cause to the Circuit Court with directions to proceed on the presumption of death at the end of the seven-year period. (*Donovan v. Major,* 253 Ill. 179.) The court said: "The presumption of fact which will justify the conclusion of death before the lapse of the time required for the legal presumption must arise from evidence of circumstances tending to show death. That the absentee was exposed to some specific peril; that he sailed in a vessel which had never been heard from, though many months overdue; that he was last seen as a passenger on an ocean steamer in mid ocean, at night, and was never seen or heard of afterwards, though diligent search was made the next morning; that he made threats to commit suicide prior to his disappearance; that the condition of his health was desperate; that he was afflicted with some disease likely

to undermine his constitution.'' While it is not to be presumed that the court named all the conditions that should be considered in determining whether death occurred before the expiration of the seven-year period, it must be taken as expressing a class of evidence that must be present to justify such a conclusion, and as holding that a finding of such earlier death cannot be supported on such evidence as this record discloses. We regard this case as controlling, and the reasons and authorities so fully discussed that we need not refer to other authorities.

We are of the opinion that under the admitted facts it must be assumed that Apitz died November 7, 1912, seven years from the date of his disappearance, and the case considered the same as if there was positive evidence that he died on that date. The trial court instructed the jury that if Apitz did not die within one year from the date of his disappearance their verdict should be for the defendant, which instruction was in our opinion correct as applied to the admitted facts. Apitz disappeared November 7, 1905, and stood suspended after November 7, 1906, under section 9 of the by-laws; therefore there can be no recovery in this case if that by-law applies, unless it be held that appellant by accepting the assessment for November, 1906, waived its provisions; and we are of the opinion that the assessment being payable before the expiration of one year, appellant did not by accepting it waive any of its rights under that by-law.

But it is urged that the by-law does not apply because it was enacted in September, 1905, several years after the certificate was issued to Apitz. His contract was conditioned upon his conforming ''in all respects to the laws, rules and usages of the Order now in force or which may hereafter be adopted by the same,'' and provided that in case of his suspension from the Order he should forfeit the rights of himself and his family to all benefits and privileges therein. After enacted

by-laws bind members of fraternal benefit societies when the contract so provides, and their contracts may be changed by such subsequent by-laws. *Royal Arcanum v. McKnight,* 238 Ill. 349, and cases there cited. We see no reason for holding the by-law unreasonable. A subsequently enacted by-law forfeiting claims for death of a member of a benefit society from suicide was held binding and reasonable in *Supreme Lodge K. of P. v. Kutscher,* 179 Ill. 340; and the law reaffirmed in *Murphy v. Nowak,* 223 Ill. 301.

Appellee claims the court erred in admitting this by-law in evidence over her objection, but no cross-error is assigned. Appellant introduced in evidence a printed pamphlet, containing this by-law, proved to be one of a great number of pamphlets in general circulation among its members; and also made proof by the certificate of its secretary, and also by a copy examined and sworn by a credible witness, in attempted compliance with sections 15, 16 and 18 of our statute on evidence and depositions (J. & A. ¶¶ 5532, 5533, 5535).

But appellee says that the clause in the application for membership binding Apitz by after enacted by-laws must be read in connection with a provision in the then existing by-laws, that the by-laws could be amended only at a regular meeting of the Supreme Lodge by a vote of two-thirds of its members present; therefore Apitz's contract was only to be bound by future by-laws enacted in that manner, i. e., that the contract may be construed to give appellant authority to repeal existing by-laws or enact new ones affecting its obligation to the insured as it existed at the time of the contract, but that it cannot be construed to authorize appellant to change a by-law providing the manner in which by-laws are to be enacted; that this by-law is a part of appellant's defense and the burden was on it not only to prove its enactment, but also to prove that it was enacted in the manner provided at

the time the contract was made, and there being no evidence that it was passed by two-thirds majority it was not admissible as a defense. The Appellate Court of the Third District in *Supreme Lodge K. of P. v. Kutscher,* 72 Ill. App. 462, rendered a decision and used language in reference to a future enacted by-law that lends support to appellee's contention here. But that case was reversed by the Supreme Court in *Supreme Lodge K. of P. v. Kutscher,* 179 Ill. 340, before cited, and it was there held that a benefit society could not by a by-law or by its "constitution," which has only the force and effect of a by-law, take away the inherent power to, in the future, adopt such other by-laws as the charter permits. We think it follows on the authority of that case and the authorities cited by that court in its opinion that the contract of a member, to be bound by future enacted by-laws, means such by-laws as may be legally enacted, whether in the manner provided at the date of his membership or in some other legal manner thereafter provided. The court did not err in admitting the by-laws in question in evidence.

But if the law should be as appellee contends, still she should not be permitted to here maintain her judgment merely because there was no proof offered that the by-law in question was passed by a two-thirds vote. That question was not raised in the trial court. No objection to the introduction of the by-laws in evidence was made on that ground. Officers and records of appellant were present at the trial, and had the question been raised proof could have been readily produced, if the trial court thought it necessary, of the manner in which the by-law was enacted. There is nothing in the record to indicate any change in the requirements for passing valid by-laws after the date of Apitz's contract, and the by-law in question was quite likely passed in the manner then required. There are always certain requisites to the passing of a valid

law, by-law or municipal ordinance, but preliminary proof in detail that they were observed is not usually necessary to their introduction in evidence

Appellee claims that appellant is a Kentucky corporation and that under the law of Kentucky this by-law is void. There appears to have been an organization under a private act of the Legislature of Kentucky in 1878. In 1885 a charter was obtained under the laws of Missouri. In 1891 (before Apitz became a member), a charter was obtained in Indiana and the company incorporated in Indiana took over the liabilities and obligations of the Kentucky and Missouri corporations, and is the corporation that issued the certificate in question to Apitz, and the one doing business in Illinois ever since that time, although in its annual statement to the Insurance Superintendent of Illinois for the year 1912, it states, by inadvertence or otherwise, that it was organized under the laws of the State of Kentucky.

We are of the opinion that the substantial error in the trial was in submitting the question of the time of the death of Apitz to the jury; that under the admitted facts he died at the end of seven years from the date of his disappearance, and under section 9 of the by-laws of appellant recovery was precluded.

Appellant also urges that the court erred in refusing to enter judgment for the defendant on the special verdict under section 3 of its by-laws, above quoted, limiting the time in which action can be brought to one year from the date of death; and appellee answers that appellant by enacting section 9 of its by-laws, and receiving assessments for one year after the date of disappearance, waived the provisions of section 3, because it received assessments after the death of the member if he died within a year, as the jury found he did; and that appellant had knowledge when it received the assessment of the fact of his disappearance. We do not see how such a construction can be reasonably

adopted. The beneficiary was under no obligation to continue the payment of assessments, but was given the option to do so for one year and prevent for that period of time the suspension of the member for non-payment of dues, at the risk of losing the amount so paid if the member was not found within that year.

Holding as we do that there can be no recovery under the admitted facts, the judgment is reversed.

*Reversed with finding of facts.*

Finding of facts. We find from the evidence that August F. Apitz died November 7, 1912; that under the by-laws of appellant to which the certificate here sued on was subject, he stood suspended November 7, 1906; and that appellee has no cause of action upon said certificate.